Go ahead, Counsel. All right, thank you, Your Honor. Good afternoon. Josh Swigart on behalf of the appellant, Mr. Flores. If it pleases the Court, the issue before the Court today, the way we view it, is did the district court error in dismissing Mr. Flores' First Amendment complaint with prejudice for failing to properly allege that an automatic telephone dialing system, an ATDS, was used to send a series of unsolicited text messages? And our position is that it did and that Mr. Flores had properly alleged enough facts to at least raise a reasonable inference that an ATDS was used to comply with the standards set forth in Rule 8. The best place, I think, for us to start is what the Court views in determining what an ATDS is. And the best way to look at that is the Court's case in Satterfield. In that case, a text message was sent unsolicited and it got past the pleading stage. In fact, it came up here after a Rule 56 motion for summary judgment. Discovery was completed and expert opinions on both sides. And the lower court determined that as a matter of law, it could be determined if an ATDS was used. And this court said that it was actually a factual dispute and sent it back down for the jury, the trier of fact, to determine if an ATDS was used. And so even in that case, on a Rule 56 standard, it was a triable issue of fact. In this case, we've alleged proper facts to at least give an inference that this text message was used with an ATDS. And I think one of the important points to point out is at the pleading stage, the plaintiff has no idea what type of dialing system was used until they're allowed to conduct discovery. It's a very fact-specific, expert-driven analysis, which in this case was denied because we couldn't get past the pleading stage. Counsel, what use, what role should the FCC's pronouncements about these types of apparati play in our decision? Well, I mean, the FCC recently, and there is a current FCC decision that's up on appeal right now, which will have a determination as far as ATDS is concerned, mostly in the capacity. Present versus potential capacity. That's most likely what's going to be determined. At least if you go back to the 2015, 2013 decision, even 2003, the FCC has broadly defined an ATDS. And I think the court recognized that in Satterfield. So the technology is very broadly defined as far as the type of capacity, be it present or potential capacity in the dialing mechanism. So I think it's some guide. I think the court should view the FCC's decisions that it's at least a very broad definition of an ATDS. Let's take it in the statute. First of all, there has to be capacity. There's no doubt, is there, that there was capacity to store or produce phone numbers to be called. And I've done these cases almost exclusively for many years, Your Honor. My personal belief is that... I'm sorry about that. My personal belief is I don't think there's any question about capacity. The argument, if we get past the pleading stage, would be present or potential. I just want to take it slowly. Yes. So there's no question there's capacity. And I think your opponent will admit that. The question is, was there a random or sequential number generator? So I want to ask you, is a sequence of one satisfying the statute? A sequence of one? There's two parts to the question, Your Honor. And I don't want to mislead the court. As far as capacity is concerned, at the pleading stage, the answer is we don't know. We can assume there's capacity. But as the case sits right now, only Mr. Flores received a text message on his phone. He couldn't with great certainty say that there is absolute capacity right now. So how can you plead at all, then, if you take that position?  You need information or belief. Correct. But what is your information and belief? And that goes to capacity, I think, is the question. But the determination as to your ---- You're assuming there's some kind of automatic system. Correct. So the question I'm putting you is, is the next part of the statute random or sequential? Random means taking one number at random. Another one is sequential. Correct. So if you have a list and you automatically go from one number to the next, is that sequential? Yes, sir. That would constitute sequential dialogue. That means you win the case. Well, we would like to think so. But, again, we don't have the system. It's an expert-driven analysis where we'd have to know what dialing system it was. We'd have to have the manual, and our expert would opine as to does it qualify as an ATDS. And so we have some evidence. I mean, this isn't a personalized text message that I would send to my colleague or vice versa. This is something that's sent through an SMS service that's usually done with call campaigns on a lot of numbers. There's a stop opt-out, and I've never received or sent a text message to my friends with an opt-out request. And here Mr. Flores, on numerous occasions, opted out of those text messages, and instantaneously there was a response acknowledging that opt-out and saying, you're not going to get any more text messages, although in this case those text messages continued. That's all indicative and would give us a good faith belief that there is a dialing system that would likely have the capacity to qualify as an ATDS. Three of our district courts have denied motions to dismiss on facts substantially similar to this case. What role, if any, should that play in our analysis? As far as denial? About whether we should overturn what the district court did here. Well, there's been a few cases. We had a case in particular. It was a reply versus Knutson in the Southern District with Judge Burns. There we went through a series of motions to dismiss, and finally we were able to plead enough facts for that court to feel that there was enough to give a reasonable inference that there was an ATDS used. I think the court should look at Satterfield. I think that's the guide. That's a case that came up after summary judgment, experts on both sides, discovery on both sides. And even then there was a triable issue of fact as to the determination of an ATDS. In this case, if Mr. Flores' case was the quintessential case and this order was held to stand, there would be no way a plaintiff could allege enough to get over that Rule 8 threshold to at least find some discovery if the system used to dial qualified as an ATDS. If you had to describe the inference that you want us to draw, what's fact and what's inference in your complaint? What do we need to infer to get you over the hump? Sure. I think the impersonal nature of the text message, the fact that it was set with an SMS, short code messaging service that's indicative of sending massive call campaigns, the fact that there was an opt-out request and the fact that he responded to that opt-out request with an instantaneous response acknowledging that, saying that we won't contact you anymore. And then subsequent to that, there was a series of five text messages going back and forth that were identical with the same stop request and the same response. And that's what you put in your pleading? Yes, sir. But the judge didn't find that was enough. So what I'm saying is beyond that, if we need to have anything beyond that, what should we infer? We were entitled to infer something that reasonably flows and follows from what you've pled. So what are you asking us to infer that's not stated specifically in your complaint? I think we have pled enough to get over that hump with the pleading the way it stands. But you don't think there are any inferences that are required? We should determine whether you've stated a cause of action based solely on the express language of the complaint. Is that what you're asking us to do? I would ask that there would be enough with the complaint, with the exception if there was requirement to be more, to at least give some discovery as to the dialing system. That's a separate issue, but in terms of the pleading, is it your position that you have stated a cause of action based upon the express language of the complaint without our or the district judge inferring anything from those facts? I would argue that we have, Your Honor. And if I could just reserve the last minute or an hour for rebuttal. Thank you. Good afternoon, Your Honors. Good afternoon. Shannon Peterson on behalf of the Defendant in Apali Adir International, LLC. Your Honors, I'd like to begin with what happened here in this case. And I would submit that if the district court had reached its decision based upon the initial complaint, dismissed the initial complaint without leave to amend, we would be in an entirely different situation than we're in right now. What the district court properly did was the district court said, you haven't alleged facts showing ATDS. You've merely alleged legal conclusions. I'm going to give you another chance. The district court gave them another chance, and they came back with a first amended complaint that, in the district court's own words, was virtually identical to the original complaint. And, in fact, it had no other allegations other than, instead of just merely stating that an ATDS, an automatic telephone dialing system, was used within the meaning of the TCPA, which was the bare bone language of the original complaint, the first amended complaint added that just the same sort of statutory language that went on to define what an automatic telephone dialing system is, and I'm paraphrasing here, but a system that has the capacity to store, produce numbers randomly or sequentially, which, again, is merely a statement of what is found in the statute itself. So no facts. And when the district court judge again challenged them in oral argument to come up with some additional facts that would survive Rule 8, plaintiff's counsel said that he couldn't come up with any. Now, I submit there's all sorts of facts, and I am loath to do plaintiff's job for them. You know, a complaint is not a brief. It remains a Rule 8 statement, a short and plain statement, with enough facts to show plausibility. So in challenge to the first ruling, there was an amendment, and the plaintiff set out the SMS short code, which tends to show an automatic system. He alleged the request to stop the acknowledgement and the failure to heed the acknowledgement, suggesting that the automatic system overrode the manual system. What more is necessary? Your Honor, to that point, the SMS short code itself isn't necessarily an indication of automation. It could be. But we're not necessarily proving anything. We're alleging and we're showing the plausibility. It's enough to show plausibility. Isn't that the question? It's enough to show a reasonable inference, and it's within the sound discretion of the trial court to draw reasonable inferences. The trial judges, me included, often put in requirements of specificity in pleading and allegations of complaints that we don't really like or causes of action we don't really like, and the courts of appeals have shot them down. It's true in the Second Circuit, where I'm from. It's true here. Isn't this the same kind of thing? No one really likes these statutes, but they're in the book and they're pled. And you don't need a brief to come into court. Our position is they're not pled sufficiently and they're not pled beyond the mere bare-bone allegations. Even the only instance that you sort of draw upon that the district court of course also addressed is this issue of the automatic response or perhaps there's an inference that it's some sort of an automated response to a stop request, and I would agree that's probably a reasonable inference, but as the district court correctly pointed out, automation isn't enough. We have to allege facts showing capacity to dial randomly or sequentially. Well, there's an inference here. I'm sorry. No, no, please. Look at paragraph 9 of the amended complaint. Despite the above stop message, which plaintiff said intending to cease defendant's contact on his cellular telephone, defendant did not cease sending automated text to plaintiff on his cellular telephone. The above detailed events repeated themselves on September 21, on September 22, and on October 3. Each time plaintiff saying stop, each time defendant saying okay, and each time defendant not heeding it, suggesting to me that it's a fair inference that the automatic system overrode the manual system and therefore suggesting an automatic feature to the system and capacity. And the district court, of course, I believe correctly concluded that the inference there is only an inference of automation and not necessarily an inference of sequential or random dialing. And if you're looking at inferences, although it would probably be pretty good inference that with respect to mass marketing messages, where there is a much higher level of randomness, there's often a high level of sequential text messaging or calling. With respect to debt collection, it's different. It's a specific individual with respect to a specific debt, usually in a specific amount. Even here, the text message, of course, referenced a specific reference number. But doesn't that actually improve your opponent's case, the fact that there was this repeated dunning? There are even separate statutes that deal with that. But the reality is, doesn't that show? It's an inference. You're trying to pressure him to keep coming back. It is automated. Same message, same result. Why isn't that inference, as my colleague suggests, enough? Well, I would say that automation, like the district court found, isn't enough. Most of what we have here is an inference of automation, but it doesn't necessarily follow that automation necessarily means capacity. What about the FCC rulings and its determinations in that regard? Well, the FCC, and again, I agree with my opposing counsel here, has spoken most recently to the issue of capacity. Again, that issue, including the ATDS issue, is currently up on appeal to the D.C. Circuit. A ruling is expected quite soon. The FCC is fundamentally a political body. It was deeply divided over its 2015 pronunciation of ATDS. You think that would have anything to do with capacity? Not their capacity, but the capacity of these votes. Well, I will say that the five-member FCC board that issued that decision was 3-2 Democrat, and now it's 3-2 Republican. Bill has always spoken highly of you, counsel. So, again, I don't know that we give too much weight there, given what's happening with the D.C. Circuit. We don't know how they're going to rule with respect to whether or not the FCC properly issued its decisions. This is a complaint, as was pointed out. This is not a brief. We're just talking about whether it satisfies the threshold. Right. And it's important to remember that a court of appeals is like a guerrilla fighter. During the daytime, when the battle's going on, we hide up in the hills, and then at night we come down and shoot the wounded. Keep that in mind. Including the district judges. And I submit that it really isn't that hard, especially for plaintiff's attorneys that are very experienced in the TCPA. They regularly have experts in these cases. They always have experts with respect to the class action TCPA cases. They could have pled more facts about Adir, about its business. They could have looked on its website. They could have talked about how debt collectors, when they're sending messages almost uniformly, I mean they could have alleged this on information belief, used modern telephone equipment. They could, based upon some of their own expert analysis and work in communications with their experts, have alleged on information and belief that all modern telephone systems have the capacity to dial numbers randomly and sequentially. It's not that hard to allege, in good faith, on information and belief. You just made your case. I'm sorry, Your Honor? You just made your case. And I'm saying the opportunity to do that was after the original complaint. And they didn't, and they went right back to the court with essentially the same allegations. And I think the district court properly exercised his discretion, followed on by the statements and oral argument that there was nothing more to add, and simply didn't allow them an additional opportunity. The time to do this is not to come and bother your honors with this in the Ninth Circuit. The time to do it and pay real attention to it is when the district court says, you haven't alleged enough facts. Come back to me with more facts. And then you'll get past the pleading stage. And that, for whatever reason, was largely ignored. They came back with essentially the same facts. The district court properly dismissed and properly exercised his discretion not to allow leave. If counsel, who just admitted, spends almost all of his time working on these cases, if he were to, as part of the complaint, in the second amendment complaint, say, I'm counsel. I work on these cases all the time. I'm an expert in this area. And in my opinion, this has all the hallmarks of ATDS. Is that something we would then consider? I mean, it seems like we're blurring the line between summary judgment and motion to dismiss here. Well, I think they certainly could have alleged. I'm not sure that he necessarily would have alleged in his opinion, et cetera. But he could allege on information and belief that all sophisticated debt collectors, that Adair is a sophisticated debt collector, it's in the business of debt collection, that all debt collectors or virtually all debt collectors use modern telephone systems, that all or virtually all modern telephone systems have the capacity to dial numbers randomly or sequentially. And I'm not saying any of this is true, but I think they could have, in good faith, said on information and belief, based upon their vast experience, and they have a very, very broad interpretation of capacity, which does indeed cover everything as recently noted before the FCC, even potentially your smartphone is an ATDS. Now, we're not going to argue that issue right now, but they could have alleged. Oh, because your time is up. My time is up. Thank you very much, counsel. I appreciate the opportunity. Thank you. Thank you. Okay. Let's hear a rebuttal, please. Thank you. I know my time is short. Just a couple points. The district court went out of its way and said that we didn't present an expert at the time of the pleading. And so I looked at that, and what exactly would we get an expert to do? He would only or she would only have the information from our client's phone. You wouldn't know how that information was transmitted. We'd need to know what type of dialer it was for them to be able to properly give an expert opinion. What I think, when you talk about inferences, what I think is interesting in this case is that the whole case, one element that we have to prove at summary judgment or at trial is, did they use an ATDS? If the answer is no, we would lose that prima facie element. And so in response to our complaint, what the defendant did is they not just filed a 12B6, but they filed a cross complaint against the dialing company, phase two. And so if there wasn't a good faith belief that the dialing company, in fact, used an ATDS, what would be the relevance of filing a cross complaint? Alternative pleading. It's called alternative pleading. You can deny on one hand and say, if it's true, the other fellow did it. So there's nothing wrong with that. I wouldn't say there's anything wrong with it, Your Honor, but I would say it would lead to an inference that a dialer could perhaps be used by phase two, at least to open up discovery to find the type of technology that was, in fact, used. So I know I have a couple seconds left, but I'd ask the Court to reverse the lower court, find that we've satisfied rule eight and put the case at issue. Any other questions from my colleague? Thank you all for your arguments. The case just argued is submitted.
judges: M. Smith, Owens, Hellerstein